[No. 30733. Department One. December 23, 1948.]

H. W. JOHNSON, *Respondent*, v. JAMES H. RUTHERFORD et al., *Appellants.*[1]

*Robt. W. Garver,* for appellants.

*Sanford Clement,* for respondent.

BEALS, J.—The plaintiff in this action, H. W. Johnson, in his *complaint,* alleged that, November 25, 1946, the defen-

[1]Reported in 200 P. (2d) 977.

dants, James H. Rutherford and Jane Doe Rutherford, husband and wife, retained his services as agent to sell a tavern, described as "Rosemere Tavern," located at 3215 Z street, Vancouver, Washington, agreeing to pay plaintiff one thousand dollars as commission, if plaintiff negotiated a sale of the tavern at the price fixed by defendants; that the plaintiff found a purchaser, who bought the tavern at defendants' price; that plaintiff had received one hundred dollars on account of the commission, and that a balance of nine hundred dollars was due plaintiff from defendants, for which amount plaintiff prayed for a judgment.

The defendants answered, denying the material allegations of the complaint, and the action proceeded to trial before the court, sitting without a jury.

At the close of the trial, the court announced that it would enter judgment for plaintiff, and, defendants' motion for a new trial having been overruled, the court signed findings of fact and conclusions of law and, April 30, 1948, entered judgment in plaintiff's favor against the defendants for nine hundred dollars, from which judgment defendants have appealed.

Appellants assign error upon the denial of their motion for a new trial and upon the entry of the judgment appealed from.

From the testimony, it appears that appellants were residents of the city of Vancouver, and that respondent is a broker, engaged in business in the city of Portland, Oregon. Respondent testified that he was a "business broker," and that appellant James H. Rutherford (who will hereafter be referred to as though he were the sole appellant) called on respondent at his office and orally listed the tavern with him, November 25, 1946. Respondent further testified that appellant stated that he would sell for fifteen thousand dollars, plus inventory, net to appellant, and that it was agreed between them that, if respondent procured a purchaser who would pay sixteen thousand dollars, plus the value of the stock on hand, appellant would sell, paying a commission of one thousand dollars to respondent. Re-

spondent, at that time, wrote a listing, describing the property, on a form which appellant did not sign, respondent writing appellant's name on the card. The listing contained, *inter alia*, the following: "Lease Expires 5 yrs. & 5 yr. option."

Respondent then testified that he found a purchaser, one Richard Schultz, who, at Vancouver, December 18, 1946, agreed to purchase the tavern and paid respondent one hundred dollars as earnest money, respondent, as agent, signing an earnest-money receipt. Mr. Schultz also signed this receipt, agreeing to purchase the property upon the terms set forth in the document. By this agreement, Mr. Schultz agreed to purchase the tavern for sixteen thousand dollars, the balance on terms therein stated, the sale being conditioned upon the purchaser receiving a license and an assignment of the existing lease.

It appears that, thereafter, Mr. Schultz contacted appellant, and that the sale of the tavern was accomplished, with the aid of an attorney in Vancouver, in accordance with the terms of the earnest-money receipt.

Respondent testified that, before the sale could be consummated, it was necessary that the liquor license issued to appellant be transferred to the purchaser, with the consent of the proper state officials, and the assignment of the existing lease on the premises approved by the lessor. It was also necessary to prepare the usual affidavit in connection with the transfer of the stock of goods in bulk.

Respondent further testified that, pursuant to the listing, he endeavored to procure a purchaser for the tavern; that he did find Mr. Schultz, and that the sale to the latter was consummated upon the terms agreed to by appellant. Respondent testified that, after the deal was completed, appellant agreed to pay respondent nine hundred dollars as the balance due for the latter's services.

Richard Schultz, called as a witness by respondent, testified that, having learned from an advertisement in a newspaper that the Rosemere Tavern was for sale, he called on respondent and went with him to look over the tavern; that,

thereafter, he paid respondent one hundred dollars and signed the earnest-money receipt above referred to, whereby the witness agreed to purchase the tavern.

Respondent did not allege in his complaint that he was licensed to engage in business as a real-estate broker within the state of Washington, and it is not contended that he had any such license at any time during the course of the transaction referred to above.

Appellant testified that he resided in Vancouver, and had owned and operated the beer tavern referred to above. He further testified that, pursuant to respondent's suggestion, appellant called at respondent's office in Portland and stated that the tavern was for sale, but that he refused to list the property with respondent and never agreed to pay respondent a commission. He admitted that respondent called at the tavern with Mr. and Mrs. Schultz, who agreed to purchase the business, and that the sale was accomplished on appellant's terms, in the office of an attorney at Vancouver. He testified that respondent entered the attorney's office while the papers were being prepared, but denied that he then, or ever, agreed to pay respondent a commission on the sale. Asked, on cross-examination, "Who negotiated the sale with Mr. Schultz," he answered, "Well, I don't know." He admitted that the terms offered by Mr. Schultz were satisfactory to the witness and that the sale was, accordingly, accomplished.

Appellant argues that, as respondent failed to allege that he had a license to operate in the state of Washington as a real-estate broker, and failed to prove that he had any such license, he cannot recover in this action.

The legislature, by Laws of 1925, Ex. Ses., chapter 129, § 4, p. 219, Rem. Rev. Stat. § 8340-4, *inter alia,* defined the term "real-estate broker." The statute created the office of "real-estate director" (the director of licenses), and provided that no person could operate as a real-estate broker without first procuring a license, as provided by the act. Sections 16 and 17 of the act (Rem. Rev. Stat., §§ 8340-16, 8340-17) read as follows:

"Sec. 16. The director may prefer a complaint for violation of any section of this act before any court of competent jurisdiction. It shall be the duty of the prosecuting attorney of each county in this state to prosecute all violations of the aforesaid provisions of this act in their respective counties in which such violations occur.

"Sec. 17. Any person acting as a real estate broker within the meaning of this act without a license as herein provided, or violating any of the provisions of this act, shall be guilty of a misdemeanor."

The statute above referred to was repealed by Laws of 1941, chapter 252, § 29, p. 870, Rem. Supp. 1941, § 8340-52, which again defined, in § 2, subd. (1), p. 858, Rem. Supp. 1941, § 8340-25, the term "real-estate broker." This statute was amended by Laws of 1943, chapter 118, § 1, subd. (1), p. 271, Rem. Supp. 1943, § 8340-25 [P.P.C. § 836-3]. By this statute, the term "real-estate broker" is defined as follows:

"(1) A 'real estate broker' is a person whose business policies and acts are free from the direction, control or management of another person, who for a compensation or promise thereof, or with intent to collect or receive a compensation or promise thereof, performs one or more acts of selling or offering for sale, buying or offering to buy, negotiating or offering to negotiate, either directly or indirectly, the auction, purchase, sale, exchange, lease or rental of real estate or interest therein for another person. or who shall advertise or hold himself out to the public by any oral or printed solicitation or representation that he is so engaged, or who takes any part in or directs or assists in the procuring of prospects or in the negotiation or closing of any transaction, which does, or is calculated to result in any of the acts above set forth, and hereinafter referred to as a broker."

In the case of *Irons Inv. Co. v. Richardson*, 184 Wash. 118, 50 P. (2d) 42, this court held that (under the 1925 statute) a broker, who had rendered services in connection with the procurement of a sublease of real estate, was not entitled to recover a commission for such service, if, at the time the sublease was executed, he was not licensed as a real-estate broker. Clearly, the activities of the plaintiff in the case cited, in assisting in the procurement of a sub-

lease, fell within the terms of the statute. There is no difference between the law now in effect and the statute referred to in the case above cited (Laws of 1925, Ex. Ses., chapter 129, *supra*), in so far as the case at bar is concerned.

In the case at bar, respondent claims a commission for services rendered appellant by way of procuring a purchaser for the beer tavern property, upon appellant's terms, and, as the respondent testified, pursuant to appellant's request.

Appellant argues that, because the transaction, which the trial court found respondent negotiated between appellant and Mr. Schultz, included the *assignment* of a lease of real estate, the trial court erred in rendering judgment in respondent's favor.

Respondent argues that the services which he rendered appellant did not include an agreement to negotiate the assignment of the already existing lease of the premises occupied by the beer parlor. If this were the decisive point in the case, it would seem that respondent's contention is not well-founded, as the lease was referred to in the listing of the property made by respondent, and a proper assignment of the lease was, evidently, an important portion of the property to be sold by appellant to Mr. Schultz.

In the case of *Salisbury v. Alskog,* 144 Wash. 88, 256 Pac. 1030, this court affirmed a judgment in favor of the plaintiff, who had sued for a commission for effecting the sale of "a lease, good will and the furniture of a rooming house in the city of Tacoma." The court quoted the definition of a real-estate broker contained in Laws of 1925, Ex. Ses., chapter 129, § 4, *supra,* holding that the same was a penal statute and should be strictly construed. The court continued:

"So construing it, we are unable to escape the conclusion that the selling of a lease or a leasehold interest in real estate does not come within the terms of the statute. Prior to the enactment of this statute, the law was clearly settled that a leasehold interest is personal property which may be conveyed as such. *Myers v. Arthur,* 135 Wash. 583, 238 Pac. 899, and cases there cited. That being the settled law of the state, it is inconceivable that the legislature

should attempt to change it by anything less than clear and unequivocal language to that effect. When the quoted portion of § 4 is carefully read, it is apparent that what the legislature said, and intended to say, was that one who rented or leased real estate for another was a broker within the act (the punctuation clearly indicates that the words 'lease or rental' mean but one thing, i. e., the procuring of a tenant), and that nothing but a forced construction could apply the words 'selling' and 'buying' to a lease."

The statute now in effect is also penal in its nature, as provided by Laws of 1941, chapter 252, §§ 22, 23, pp. 868, 869, Rem. Supp. 1941, §§ 8340-45, 8340-46.

The case of *Salisbury v. Alskog, supra,* has several times been cited as an authority in our decisions. *National Bank of Tacoma v. Globe Indemnity Co.,* 164 Wash. 222, 2 P. (2d) 706; *Sakris v. Eagle Indemnity Co.,* 176 Wash. 73, 28 P. (2d) 316; *Irons Inv. Co. v. Richardson, supra; In re Barclay's Estate,* 1 Wn. (2d) 82, 95 P. (2d) 393.

The legislature has twice amended the statute above referred to since the rendition of the decision in the case of *Salisbury v. Alskog, supra,* without in any way changing the definition of the phrase "real-estate broker," in so far as the question here presented is concerned, and has thereby signified its acquiescence with the construction placed upon the statute by this court.

Rem. Rev. Stat., § 5825 [P.P.C. § 577-3], provides that.

" . . . an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission"

is void unless in writing.

Appellant suggests that the oral contract upon which respondent recovered in this action, is insufficient to support the judgment, the contract being oral and not in writing, and the property to be transferred including a lease of real estate. This contention is without merit, in view of the opinion of this court in the case of *Myers v. Arthur,* 135 Wash. 583, 238 Pac. 899.

In its oral opinion, the trial court strongly relied upon the case of *Weingast v. Rialto Pastry Shop, Inc.*, 243 N. Y. 113, 152 N. E. 693, in which the court of appeals of New York upheld the right of a business broker, who was not licensed under the New York statute requiring real-estate brokers to be licensed, to recover a commission for effecting the sale of a business as a going concern, although the business sold included the lease of a store or building.

It does not appear that the opinion of this court in the case of *Salisbury v. Alskog, supra,* was called to the attention of the trial court, and the case was not referred to in the briefs filed before this court. In view of the *Salisbury* case, discussion of the opinion of the New York court of appeals is unnecessary.

In its oral opinion, the trial court expressed the view that respondent had proved, by a preponderance of the evidence, that he was entitled to the commission claimed and, in the formal findings of fact entered, found that

". . . the plaintiff entered into the service of the defendants, at their request, as agent to sell and dispose of a certain tavern, to-wit; 'Rosemere Tavern' at 3215 Z Street, Vancouver, Washington; that plaintiff negotiated the sale of said tavern belonging to the said defendants upon the terms and conditions and at the time agreed upon and suggested by the defendants."

This finding is amply supported by the evidence.

The court then found that the purchaser procured by respondent bought the tavern upon the terms fixed and agreed upon by appellant, and that the property was sold for the sum of sixteen thousand dollars, and concluded that respondent was entitled to judgment against appellants for nine hundred dollars and costs. The court then entered judgment accordingly.

No error is disclosed by the record, and the judgment appealed from is affirmed.

MALLERY, C. J., STEINERT, JEFFERS, and HILL, JJ., concur.

February 5, 1949. Petition for rehearing denied.