[No. 36112.    Department One.    July 19, 1962.]

*In the Matter of the Estate* of CATHERINE H. STODDARD, *Deceased.*

W. BYRON LANE, *as Administrator, Appellant,* v. THE PACIFIC NATIONAL BANK OF SEATTLE, *Respondent.**

*Evans, McLaren, Lane, Powell & Moss, Barry H. Biggs,* and *David N. Brictson,* for appellant.

*Holman, Mickelwait, Marion, Black & Perkins, J. Paul Coie, David E. Wagoner,* and *J. David Andrews,* for respondent.

FOSTER, J.—This is an appeal from a summary judgment dismissing appellant's action to recover a broker's commission for the sale of real property.[1]

*Reported in 373 P. (2d) 116.

---

[1] Appellant is referred to in this opinion as Stoddard and Company, the assumed name under which the deceased husband did business.
Appellant, administrator of the estate of Catherine H. Stoddard,

On or about August 12, 1957, the respondent imparted relevant data respecting its Washington property to Stoddard and Company, an Oregon licensed real-estate broker. Respondent authorized the broker to reveal such information to a single identified Oregon concern but did not employ it to sell the property and positively refused to pay a commission if a sale were consummated, but, on the contrary, insisted that Stoddard and Company look exclusively to the customer for all compensation. Such authorization was only an indication that respondent might be receptive if the identified Oregon concern offered to purchase. Stoddard was never authorized to engage in a broad search for a prospective customer; indeed, respondent interdicted such activity by Stoddard.

Voluminous correspondence ensued and appellant conferred with respondent in Seattle on three separate occasions. However, all of appellant's negotiations with the Oregon purchaser occurred in that state, none in Washington although Stoddard did show the property to its Oregon customer before respondent agreed to pay it a commission.

Nevertheless, appellant had no contract of employment with respondent until December 31, 1957. From Portland, on December 30, 1957, appellant telegraphed the Oregon purchaser's offer to respondent in Seattle, and also requested a commission from respondent of five per cent of the sale price. From Seattle, respondent replied by telegraph the same day, changing some of the terms, but restricted the payment of the commission to the sale proceeds. On the next day, appellant, from Portland, telegraphed acceptance of respondent's counter offer. Thereafter, respondent repudiated the sale. We refused specific performance. *Beall v. Pacific Nat. Bank,* 55 Wn. (2d) 210, 347 P. (2d) 550.

There is here on appeal the subsequent action to recover

sued respondent Pacific National Bank for a broker's commission on the sale of real property. The claim passed to Mrs. Stoddard by assignment from the estate of her late husband, N. Thomas Stoddard, who was a licensed real-estate broker in Portland, Oregon.

the broker's commission which action was dismissed because appellant had not complied with the Washington Real Estate Brokers' Act, RCW 18.85. The trial court held that the statute closed Washington courts to appellant.

The first question is whether RCW 18.85 controls. It does not.

██ Until December 31, 1957, there was no contract. Until then, neither the broker nor the respondent bank assumed any contractual duty to the other. Neither was bound to do anything. The contract was consummated when appellant deposited the acceptance of respondent's counter offer with the telegraph company in Portland.

It is a fair inference from the record brought here that neither the appellant nor its customer nor any representative of either was thereafter in Washington. This appeal presents a problem in conflicts of law which was completely absent in *Grammer v. Skagit Valley Lbr. Co.*, 162 Wash. 677, 299 Pac. 376. That controversy dealt with a contract made and performed in this state respecting Washington property. The law of this state controlled. There was no suggestion of even the possibility of applying any other law.

The decided American cases hold[2] that the failure of a real-estate broker to have a license in the state in which the land is situated does not bar recovery of a commission if the contract therefor was made and performed in another state in which the broker is licensed.

*James v. Hiller*, 85 Ariz. 40, 330 P. (2d) 999, is fairly representative of the decisional law. The matter is summarized in the following passage from the opinion:

"The general rule is that a brokerage contract is a contract of employment for personal services and its validity is determined by the law of the state where made unless it appears from the contract that it is to be performed elsewhere, in which event the law of the state where it is to be performed governs irrespective of the location of the property involved. Tillman v. Gibson, 44 Ga. App.

---

[2]A fair collection of the American cases will be found in *Richland Development Co. v. Staples*, 295 F. (2d) 122.

440, 161 S. E. 630; 11 Am. Jur., Conflict of Laws, section 167, page 474; Annotation 159 A. L. R. 266. It is likewise the rule that brokerage contracts such as in the instant case are unilateral and the place of contracting is where the last act necessary to make it binding occurs, which is the place where the broker produces a purchaser ready, able and willing to buy at the authorized price. Cochran v. Ellsworth, 126 Cal. App. 2d 429, 272 P. 2d 904; Canadian Industrial Alcohol Co. v. Nelson, 8 W.W. Harr. 26, 38 Del. 26, 188 A. 39; 2 Beale on Conflict of Laws, section 323.2.

"In this case not only were all the instruments heretofore related actually executed in New Mexico but the purchaser was found therein and there being nothing to indicate an agreement that it should be performed in Arizona, we conclude that the contract for plaintiff's services was made in New Mexico and performed therein. Under such circumstances its validity is determined by the law of that state and no Arizona brokerage license is required to enable recovery thereon. McGillivray v. Cronrath, 48 Idaho 97, 279 P. 613."

RCW 18.85.100 provides:

"It shall be unlawful for any person to act as a real estate broker, associate real estate broker, or real estate salesman without first obtaining a license therefor, and otherwise complying with the provisions of this chapter.

"No suit or action shall be brought for the collection of compensation as a real estate broker, associate real estate broker, or real estate salesman, without alleging and proving that the plaintiff was a duly licensed real estate broker, associate real estate broker, or real estate salesman at the time the alleged cause of action arose."

This, the respondent argues, closes the door of the Washington courts to the action. The argument is based primarily upon *Tanenbaum v. Sylvan Builders, Inc.*, 29 N. J. 63, 148 A. (2d) 176. While it is true that Tanenbaum, the broker, was denied recovery, the facts sufficiently differentiate the two cases so that we do not find the New Jersey case of controlling importance.

Tanenbaum's commission contract was executed in New Jersey, where the land was situated.[3] Tanenbaum negoti-

---

[3] " . . . Tanenbaum's authority to negotiate the transaction was recognized therein and as the result of that recognition he obtained

ated with his customer only in New Jersey.[4] The penal aspects of the New Jersey brokers' commission act applied. Tanenbaum failed to prove that he had a New York broker's license, the state of his residence,[5] although he had offices there.

Here, on the other hand, the contract was executed in Oregon. All of Stoddard's activities subsequent to the contract of employment were in Oregon, and, although it does not conclusively appear, it is a fair inference that Stoddard was never thereafter in the state of Washington. The penal section of the Washington act could not apply. The basis of the decision of the Supreme Court of New Jersey is that, because the contract was both made and performed in New Jersey, it was, therefore, in violation of the legislatively declared public policy of that state.

RCW 18.85.340 makes any violation of the real-estate brokers' act a gross misdemeanor. Both the original act (*Salisbury v. Alskog*, 144 Wash. 88, 256 Pac. 1030) and the present act (*Johnson v. Rutherford*, 32 Wn. (2d) 194, 200 P. (2d) 977) have been judicially determined to be penal in nature and, therefore, strictly construed.[6]

Respondent places great emphasis upon *Reed v. Kelly*, 177 F. (2d) 473 (C. A. 7th, 1949). While that action involved the sale of Wisconsin real estate, it was brought in Wisconsin on a contract made and performed in Chicago. The Federal Court of Appeals decided that § 136.11 of the

---

in this State the separate written memorandum of authority and the stipulation to pay commissions. . . . " *Tanenbaum v. Sylvan Builders, Inc.*, 29 N. J. 63, 70, 148 A. (2d) 176.

[4]". . . Tanenbaum's activities in connection with the negotiations were not carried on in the county where the final concord was reached and executed. . . . " *Tanenbaum v. Sylvan Builders, Inc., supra.*

[5]". . . Proof on the motion disclosed the place of business to be in New York City but nowhere was it shown that Tanenbaum held a New York license (as required in that state, . . . " *Tanenbaum v. Sylvan Builders, Inc., supra.*

[6]"The statute precluding a broker from recovering commissions unless his authority is in writing, is in derogation of the common law and must be strictly construed. . . . " *Grammer v. Skagit Valley Lbr. Co.*, 162 Wash. 677, 683, 299 Pac. 376.

Wisconsin brokers' act (20 Wis. Stat. Ann. 270, § 136.11),[7] closed the Wisconsin courts because plaintiff was not licensed in that state. In diversity cases, federal courts sit as state courts bound by state law. *Erie R. Co. v. Tompkins*, 304 U. S. 64, 82 L. Ed. 1188, 58 S. Ct. 817. There was no authoritative Wisconsin decision that the courts of that state were closed to such an action. Indeed, the question has not arisen in that state. The federal appellate court merely surmised that such would be the state decision, basing its guess[8] upon *Levy v. Birnschein*, 206 Wis. 486, 240 N. W. 140, which, however, does not support the speculative conclusion. That was an action for a broker's commission instituted before the enactment of § 136.11, but not brought to trial until after the statute's effective date. It was held that procedural statutes were retrospective in operation.[9] The right remained, but the remedy was withdrawn.

Nor is it likely to arise hereafter, because Illinois residents are no longer required to resort to Wisconsin courts or the courts of any other state to enforce their rights respecting claims originating in Illinois. After the long delayed demise of the unfortunate *Pennoyer v. Neff*, 95 U. S. 714, 24 L. Ed. 565, Illinois was in the vanguard of enlightened states enacting statutes authorizing the service of summons outside the state's territorial boundaries in actions respecting claims originating therein.[10]

It is, therefore, no longer necessary for Illinois residents

[7]"No person engaged in the business or acting in the capacity of a real estate or business opportunity broker or salesman within this state shall bring or maintain an action in the courts of this state for the collection of a commission or compensation for the performance of any act mentioned in this chapter without alleging and proving that he was a duly licensed broker or salesman at the time the alleged cause of action arose." 20 Wis. Stat. Ann. 270, § 136.11.

[8]". . . that 'law is the last guess of the odd judge of the appellate court,' and 'only the Almighty foresees what the appellate court will do.' . . ." Per Bourquin, J., *Great Falls Gas Co. v. Public Ser. Comm. of Montana*, 39 F. (2d) 176, 178.

[9]This court reached the same conclusion in *Nelson v. Department of Labor & Industries*, 9 Wn. (2d) 621, 115 P. (2d) 1014.

[10]Ill. Rev. Stat., chapter 110, § 16, p. 158; *Nelson v. Miller*, 11 Ill. (2d) 378, 143 N.E. (2d) 673; *Gray v. American Radiator & Standard*

to sue in Wisconsin respecting claims originating in Illinois.[11] Should Oregon hereafter enact a statute authorizing service of summons outside its territorial boundaries and appellant sue the respondent in the courts of Oregon, a judgment in such action would be valid in Washington. *Roche v. McDonald*, 275 U. S. 449, 72 L. Ed. 365, 48 S. Ct. 142, 53 A. L. R. 1141, reversing 136 Wash. 322, 239 Pac. 1015, 44 A. L. R. 444. It is, therefore, an idle formality to close the doors of the courts of this state to Oregon residents on claims originating in Oregon.

*Reed v. Kelly, supra,* was criticized by the Fifth Circuit in *Richland Development Co. v. Staples,* 295 F. (2d) 122, 125, 126, note 2, as follows:

" . . . Reed v. Kelly, 7 Cir., 1949, 177 F. 2d 473, and Arnold v. Wilson, D. C. S. D. Tex. 1952, 107 F. Supp. 961, cited as cases in which the court made a belabored resort to 'remedy', were both based on a specific state statute similar to the one in Tanenbaum denying enforcement where contracts failed to conform with the requirements of the statutes. Such a statute closing the doors of the courts appears to be a directive which the courts quite clearly should follow irrespective of whether the contract would otherwise be enforceable under conflicts of laws principles. These cases therefore are of doubtful relevance where a contract or its performance has infringed a local licensing or other regulatory statute but there is no special provision closing the courts. In Ehrenzweig's 'Contracts in the Conflicts of Laws', 59 Col. 973 (1959), he points out that 'invalidation has occurred only exceptionally'; that 'even in [the] area [of contracts violating licensing provisions] the trend toward validation can be observed.' 59 Col. 973, 1003."

---

*Sanitary Corp.,* 22 Ill. (2d) 432, 176 N.E. (2d) 761. Periodical studies are collected in *The Dahlberg Co. v. Western Hearing Aid Center, Ltd.,* 259 Minn. 330, 334, note 4, 107 N.W. (2d) 381. Prior to the enactment of our counterpart of the Illinois out-of-state service act (Laws of 1959, chapter 131, p. 669; RCW 4.28.080; RCW 4.28.185), Oregon had a weird device for closing its courts to Washington residents respecting claims originating in Washington. *Dippold v. Cathlamet Tbr. Co.,* 98 Ore. 183, 193 Pac. 909; *Montesano Lbr. Co. v. Portland Iron Works,* 78 Ore. 53, 152 Pac. 244.

[11]Oregon has no such statute.

Since *Erie R. Co. v. Tompkins, supra,* the federal courts have no power to decide state law but are obliged to apply the state decisional law. There is no state decision that statutes similar to the second paragraph of RCW 18.85-.100 close the doors of the courts for recovery of a broker's commission on a contract made and performed in a foreign state respecting the sale of forum land. The Tanenbaum case does not so decide.

This appeal is from the dismissal of the action on the respondent's (defendant's) motion for summary judgment. We have no occasion to examine the merits of the controversy, and we express no opinion thereon, but decide only that the action is not barred by the real-estate brokers' act and that the courts of this state are not closed.

The judgment is reversed with instructions to proceed in accordance with the views herein expressed.

HILL, WEAVER, ROSELLINI, and OTT, JJ., concur.

September 11, 1962. Petition for rehearing denied.