[Civ. No. 14712. Second Dist., Div. Three. July 26, 1945.]

A. T. C. HOLWAY, Respondent, v. JOHN MALLOY et al., Appellants.

George J. Tapper and Louis P. Pink for Appellants.

George W. Burch, Jr., for Respondent.

SHINN, J.—Plaintiff had judgment for the specific performance of two separate writings, which were construed by the court as agreements of defendant John Malloy to sell and convey to plaintiff two apartment houses, with the furniture contained therein. The court found that the furniture was community property, the real estate the separate property of the husband. John Malloy and Dorothy G. Malloy, his wife, appeal. John Malloy will be referred to as the defendant.

On April 7, 1943, defendant listed with one Alfred J. Dixon, a realtor, upon separate forms, the apartment houses in ques-

318

tion. The listings described the properties by street number, stated the price of each as "net 30,000", the size of the lot, encumbrance of $12,000 on one property, $13,000 on the other, at 5 per cent interest, and recited, "the above listing is to include the furniture & Carpeting as per invatory schedule." One of the listings read further as follows: "In consideration of services to be rendered, I hereby give to ALFRED J. DIXON of 2140 Hillhurst Ave the Exclusive right to sell my property as listed above, for a period of 30 days from the date. If a sale or exchange is effected by myself, during their agency for the above described property, I agree to pay them 5%. Five per cent of the selling price, as commission for their services, and to furnish satisfactory title to said property Owner J. Malloy." The other listing contained the same provisions, although not in identical language, the word "ourselves" being used instead of the word "myself" in the second listing. These listings were signed by defendant but not by Dorothy G. Malloy.

The property was shown to plaintiff, Holway, who on May 2, 1943, gave the broker two checks for $500 each, payable to the broker, whereupon two writings were prepared and signed by the broker and plaintiff, reading as follows: "DEPOSIT RECEIPT Los Angeles, California May 2/43 RECEIVED from A T C Holway 19061 Wells Dr Tarzana Calif, the sum of Five Hundred Dollars ($500.00) Dollars as a deposit on account of purchase price of following described property, situate in the City and County of Los Angeles State of Calif, to-wit: Lot 55 Tract 3907, Map book 42 pages 38/39 in the Los Angeles County Records. Also known as 1915 No Vermont subject to conditions, restrictions, reservations, and rights-of-way now of record. Purchase price to be $30,000.00. Plus 5% Commission Dollars. Balance of purchase price to be paid as follows: All cash to present loan of record approximately $13,000.00 and including all furniture, as per inventory, agreed on by buyer & seller. commission to be paid out of Escrow, by buyer. AND IT IS HEREBY AGREED: That in the event said purchaser shall fail to pay the balance of said purchase price or complete the purchase as herein provided, the amount paid hereon shall, at the option of the Agent be retained as liquidated and agreed damages. That the current taxes, insurance, rents and interest of said property shall be pro-rated. That the evidence of title is to be in form of policy of title insurance issued by a respon-

sible title company and to be furnished and paid for by the Seller. That any monies received are subject to owner's approval. That this offer expires 30 days from date hereof. Time can be extended by purchaser. Alfred J. Dixon. Lic, #16340 Broker. By (Signed) Alfred J Dixon I agree to purchase the above described property on the terms and conditions herein stated. (Signed) A. T. C. Holway Purchaser. I agree to sell the above described property on the terms and conditions herein stated, and agree to pay the above signed agent as commission the sum of .............. dollars, or one-half of the deposit in case same is forfeited, provided same shall not exceed full amount of the commission.

.................... Seller. ................... Seller.''

The deposit receipts were identical except as to the descriptions of the properties and the amounts of the encumbrances. Neither receipt was signed by John Malloy or his wife. Mr. Dixon notified defendant of Holway's willingness to buy the property. On May 5, 1943, Holway opened an escrow with the Title Insurance and Trust Company, signed instructions for the purchase of the two properties, and deposited in the escrow $35,000, which was the total purchase price, less the encumbrances. Instructions were prepared for the signature of defendant but neither he nor his wife signed the same. Both refused to go through with the sale of either property. Plaintiff's money remained in the escrow until after the trial of the action, when it was withdrawn and deposited with the clerk for payment to defendant John Malloy in accordance with the terms of the judgment, which judgment ordered defendants Malloy to convey the real and the personal property to plaintiff upon payment of the purchase price.

The writings under which defendant listed the properties with the broker were the only writings signed by defendant and they did not confer upon the broker any authority to enter into a contract of sale on behalf of the owner or owners. They were merely authorizations to the broker to find a purchaser or purchasers for the property. Authority given to a broker "to sell" real property, in listing it for sale, only authorizes him to find a purchaser; it relates to the services to be performed by the agent in order to earn the agreed compensation and does not make him the agent of the owner to enter into a contract of sale. This is a well established canon of the law of real property. (*Duffy* v. *Hobson* (1870), 40 Cal. 240

[6 Am.Rep. 617]; *Gold* v. *Phelan* (1922), 58 Cal.App. 471 [208 P. 1001]; *Armstrong* v. *Lowe* (1888), 76 Cal. 616 [18 P. 758]; *Church* v. *Collins* (1912), 18 Cal.App. 745 [124 P. 552]; *Thompson* v. *Scholl* (1916), 32 Cal.App. 4 [161 P. 1006]; *Slater* v. *Rauer* (1919), 43 Cal.App. 748 [185 P. 864]; *Grant* v. *Ede* (1890), 85 Cal. 418 [24 P. 890, 20 Am.St.Rep. 237]; *Holland* v. *McCarthy* (1916), 173 Cal. 597 [160 P. 1069]; *Stemler* v. *Bass* (1908), 153 Cal. 791 [96 P. 809].) These cases are directly in point; they are cited in the opening brief of appellants but are not mentioned in the brief of respondent nor does respondent cite any case which even tends to support his contention that the agent had authority to enter into a contract of sale.

 The complaint alleged no agreement between plaintiff and defendants other than the unauthorized agreement signed by Dixon, and it alleged no writing signed by the defendants or either of them other than the agreement of listing. It therefore stated no cause of action and the proof showed that plaintiff has no cause of action. Inasmuch as there was no written agreement of sale or note or memorandum thereof in writing, subscribed by the owner, or an agent authorized in writing, to sell the property, the judgment in favor of plaintiff must be reversed. (Civ. Code, § 1624.) It is therefore unnecessary to discuss the other grounds for reversal which are relied upon by appellants.

The position of Dorothy G. Malloy should be explained. Her appeal involves also the decision that she had conveyed her community interest in the real property to her husband and that therefore her signature was not necessary upon a sale of the properties. It appears that on or about April 5, 1943, Mrs. Malloy signed a quitclaim deed in favor of her husband, conveying the two apartment houses and certain other property. She filed a separate answer, alleging that the property was community property, that she did not deliver the deed to her husband, that it had been destroyed, and that her signing of it was procured by specific acts of fraud and undue influence of the husband and by specific promises which he did not intend to and did not keep. The court found that the property was community property until Mrs. Malloy gave her husband the quitclaim deed, that the deed was given as a part of a property settlement agreement, and that both were valid.

The husband and wife have separate counsel on the appeal

but they have filed a single brief, in which they make a vigorous attack upon the findings which acquitted Mr. Malloy of the charges of fraud and undue influence and established the validity of Mrs. Malloy's deed. Mrs. Malloy gave testimony which, if believed, would have convicted her husband of fraud; it was stipulated as to some material facts (apparently to save the husband from embarrassment) that his testimony would be the same as hers; important evidence offered by Mrs. Malloy upon the fraud issue was excluded and the court of its own motion declined to allow Mr. Malloy to give testimony of a self-incriminating nature which he was quite willing to give. Mrs. Malloy sought no affirmative relief for the cancellation of her deed, and the impression which we gain from the record is that the trial of the issue of fraud was not regarded as an adversary proceeding as between Mr. and Mrs. Malloy. Furthermore, it might be added that it would be difficult indeed to reconcile the conclusion that there was no fraud with certain of the findings upon that issue. We mention these matters only to make it clear that a reversal of the judgment will have the effect of annulling all of the findings and conclusions relative to the validity of any property settlement agreement between Mr. and Mrs. Malloy and the validity of Mrs. Malloy's quitclaim deed to her husband.

The judgment is reversed and the court is directed to amend its conclusion of law to provide that plaintiff is not entitled to a judgment against the defendants or either of them, and thereupon to enter judgment in favor of defendants John Malloy and Dorothy G. Malloy against the plaintiff, A. T. C. Holway.

Desmond, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied August 22, 1945, and respondent's petition for a hearing by the Supreme Court was denied September 20, 1945.