[Civ. No. 16926. Second Dist., Div. Three. Oct. 25, 1949.]

LEWIS W. RHODE, Respondent, v. GUY BARTHOLOMEW et al., Appellants.

Harry W. Elliott and Robert E. Moore for Appellants.

J. Q. Gilchrist for Respondent.

VALLÉE, J.—Appeal by defendants from a judgment for plaintiff entered on a verdict of a jury in an action to recover compensation for services rendered in securing a purchaser of all of the capital stock of a corporation.

The complaint alleged these facts. About May 1, 1943, defendants entered into an oral agreement with plaintiff whereby they agreed to sell and transfer all of the capital stock of Neu-Bart Stamping and Manufacturing Company, a corpora-

tion, to any purchaser procured by plaintiff for a consideration of $225,000, and agreed to pay plaintiff for his services "in securing such purchaser and assisting in any such sale" all sums in excess of $225,000 that might be obtained from such sale. During July or August, 1943, plaintiff procured P. Seymour Heath and George W. Talbott as prospective purchasers of said stock; "that thereafter for a period of six or seven months plaintiff negotiated with defendants and said P. Seymour Heath and George W. Talbott and with agents and employees of said Heath and Talbott, in respect to the sale and purchase of said stock." About April 8, 1944, as a result of the work, efforts and services of the plaintiff, as aforesaid, defendants sold said capital stock to P. Seymour Heath and George W. Talbott, or one of them, and received therefor $250,000.

The answer denied the allegations of the complaint; and, as a special defense, pleaded that the services alleged to have been performed were performed by plaintiff as a broker in corporate securities, if performed at all, and that he was not licensed to act as such broker.

The cause was tried by a jury in 1947, resulting in a verdict for plaintiff. A motion by defendants for a new trial was granted. The cause was reset for trial. Thereafter plaintiff moved for leave to file an amended complaint. The motion was denied without prejudice. At the hearing of the motion the words "that thereafter for a period of six or seven months plaintiff negotiated with defendants and said P. Seymour Heath and George W. Talbott and with agents and employees of said Heath and Talbott, in respect to the sale and purchase of said stock" were stricken. At the commencement of the second trial plaintiff moved to amend the complaint by striking therefrom the words "and assisting in any such sale." The motion was denied without prejudice. At the conclusion of the trial and before argument to the jury, plaintiff again moved to amend the complaint by striking the quoted words. The motion was granted. The jury rendered a verdict for plaintiff for $25,000. Defendants appeal from the judgment which followed.

Appellants contend that the services performed by respondent were those of a broker as the term is defined by the Corporate Securities Act; that he did not have a broker's license; that therefore he may not recover. The fact that respondent did not have a broker's license at any time during the transaction in question is not disputed.

In 1943, Neu-Bart Stamping and Manufacturing Company, a corporation, was engaged in the business of manufacturing stamps. Appellants Neubauer and Bartholomew owned all of its capital stock; each owned one-half. In May, 1943, respondent called Bartholomew on the telephone and asked him "if they would be interested in selling." Bartholomew told him to "come out and see me." The next day respondent called on Bartholomew and told him he had a man who was interested in buying the stock. Bartholomew told him that he wanted him to talk to Neubauer. Thereafter, several conversations took place between respondent and Neubauer. In one Neubauer said the price would run from $210,000 to $225,000. Respondent said, "Well, give me something definite, please." In a few days Neubauer told him that the price was $225,000 "net," and that he would get his money "by adding to that price." At that time respondent asked Neubauer for a financial statement and suggested that he prepare one and not put the name of the company on it. Respondent had a prospective buyer for the stock at the time he first called Bartholomew, a Mr. Talbott. He had known for about a month before he spoke to Bartholomew that Talbott was interested in buying the stock. After he had obtained the price from Neubauer, respondent showed Talbott the financial statement, told him about the plant and that the price of the stock was $250,000. Neubauer, Talbott and respondent then met at respondent's office and respondent introduced Neubauer to Talbott. Talbott told respondent that he did not have enough money to purchase the stock, and said that a Mr. Borden might be interested in purchasing it. A short time later a meeting took place in Borden's office, at which respondent, Neubauer, Bartholomew, Talbott and Borden were present. At the meeting there was some discussion about the plant, and near the end Borden said, "What is the price?" Respondent replied, "Well, the price is $250,000.00, Mr. Borden, that is the only reason I am here, I guess, to put the price on the property." Respondent did not take any part in the conversation other than to make this statement.

About a month later Talbott introduced respondent to a Mr. Heath as a prospective purchaser. Between the time that respondent first called Talbott's attention to "the purchase of the stock" until respondent met Heath, he (respondent) was at Talbott's office twice and at his home once. On each occasion it was in regard to purchase of the stock. Respondent told Heath the price was $250,000. Respondent told Heath

and Talbott that so far as he knew the plant was still for sale; that the business of the company was stamp manufacturing, and that it had war contracts. Heath met respondent at the latter's office on one occasion; Talbott was there with respondent on another occasion. On each occasion the purchase of the stock was discussed. Respondent went to Heath's office three to five times and talked to Talbott or Heath, or both, about various features of the "stock purchase deal." Heath met appellants and they had some negotiations relative to the sale of the stock at which respondent was not present. Neubauer became provoked at Heath and ceased dealing with him. Talbott mentioned a Mr. Cunningham to respondent as a prospective purchaser. Later Talbott arranged to have respondent and Bartholomew meet Cunningham. Respondent knew that Cunningham was connected with Heath, but did not disclose the fact to appellants. He had told Bartholomew that Cunningham was a prospective purchaser. Respondent met Cunningham and introduced Bartholomew to him. The three had lunch together and Bartholomew and Cunningham talked about the purchase of the plant. Respondent testified that that was the purpose of the lunch and that he could not recall whether he participated in the discussion except that he stated the price was $250,000. After the lunch, appellants negotiated with Cunningham respecting the purchase. Respondent did not participate in these negotiations. Talbott and Cunningham were acting for Heath. Cunningham was given an option to purchase at $250,000, which was not exercised because of a dispute as to how the details should be handled. Heath then employed a Mr. Franklin to see if he could purchase the stock. The stock was sold to Franklin for $250,000 on April 7, 1944. Franklin did not disclose to appellants that he was acting for Heath until the purchase was completed. Respondent did not participate in the negotiations with Franklin. The actual purchaser of the stock was either Heath or Trans-Pacific Corporation, of which Heath was chairman of the board of directors. Heath paid Franklin $5,000 for this and other services.

Prior to the commencement of the present action, respondent sued Heath, Talbott, Cunningham and Trans-Pacific Corporation for his services in effecting the purchase of the stock and recovered judgment against Heath, Talbott, and Trans-Pacific Corporation for $4,707.75, which was paid.

As we have said, respondent, in the verified complaint in the present action, stated that "during July or

August of 1943, plaintiff procured one P. Seymour Heath and one George W. Talbott as prospective purchasers of said stock; that thereafter for a period of six or seven weeks plaintiff negotiated with defendants and said P. Seymour Heath and George W. Talbott and with agents and employees of said Heath and Talbott, in respect to the sale and purchase of said stock.'' On the trial he testified that the foregoing statement was true. He was interrogated and testified as follows: ''Q. I will ask you if it is or is not a fact that for a period of six or seven months you negotiated with the defendants and with P. Seymour Heath and George W. Talbott and with agents and employees of said Heath and Talbott in respect to the sale and purchase of said stock? A. Yes.''

Neubauer testified that respondent was to find a purchaser ''for us to negotiate with''; that they (appellants) did not tell respondent, ''You can go out and sell our stock to someone''; that respondent had no authority to sell and accept payment or to enter into any contract to sell the stock; that he had no authority to do anything except find a prospective purchaser with whom appellants could negotiate for the sale of the stock; that respondent was to introduce them ''to a prospective purchaser, tell him about the plant, facilities we had and so forth.'' Bartholomew testified that the only thing respondent was to do was to introduce appellants to a prospective purchaser; and that, as far as he knew, all respondent did was to bring these various prospective purchasers to appellants.

At the times in question, section 2, subdivision 8 of the Corporate Securities Act, in part, provided: '' 'Sale' or 'sell' shall include every disposition, *or attempt to dispose,* of a security or interest in a security for value. . . . 'Sale' or 'sell' shall also include a contract of sale, an exchange, *an attempt to sell,* an option of sale, *a solicitation of a sale,* subscription or *an offer to sell,* directly or by an agent, or a circular letter, advertisement or otherwise; . . .'' (Stats. 1917, p. 673; 2 Deering's Gen. Laws, Act 3814, p. 1420.) (Italics added.) Section 2, subdivision 10, in part, provided: ''The word 'broker' *includes every person* or company, other than an agent, who shall, in this State, engage either wholly *or in part* in the business of selling, offering for sale, negotiating for the sale of, or otherwise dealing in any security issued by others, . . .'' (*Ibid.*) (Italics added.) Section 6 of the act provided that no person shall act as a broker until such person shall have first applied for and secured from

the commissioner of corporations a certificate then in effect authorizing such person so to do. (*Ibid.*, p. 1424.) A violation of the statute is a public offense. (*Ibid.*, § 18, p. 1430.)

Whether a person acted as a broker in a given transaction depends upon the nature of the services performed. (*Gage* v. *Billing*, 12 Cal.App. 688, 693 [108 P. 664].) A person whose business it is to bring buyer and seller together is a broker. (*Eaton* v. *Yount*, 48 Cal.App. 221, 224 [191 P. 1009].) The fact that respondent had no authority to effect a sale is of no consequence in determining whether he was a broker. (8 Am.Jur. § 51 et seq., p. 1011; *Holway* v. *Malloy*, 70 Cal.App.2d 317 [160 P.2d 893]; *Mason* v. *Mazel*, 82 Cal.App.2d 769 [187 P.2d 98].) Neither does the fact that appellants also may have negotiated with the various prospective purchasers affect the question. Employment as a broker is clearly established where an owner of property lists it with another and the latter acts in pursuance of his request to find a buyer willing to purchase upon his terms. (8 Am.Jur. § 17, p. 999; *Holway* v. *Malloy, supra,* 70 Cal.App.2d 317.) Where a property owner, in response to an inquiry by a person with reference to the former's property and the price thereof, gives the price of the property, the terms of sale, and the commission allowable, and the latter immediately seeks to find a purchaser, he is deemed to become the broker of the owner. (*C. C. Jones Inv. Co.* v. *Lowrey*, 99 Kan. 87 [160 P. 999].) The relation between a broker and his customer ordinarily is that of principal and agent, the broker being a special agent. (12 C.J.S. § 11, p. 29; *Anderson* v. *Geo. L. Barney Co., Inc.*, 1 Cal.App.2d 340 [36 P.2d 717].) The duty of a broker, in the absence of an agreement enlarging his duties, is merely to bring the principals together to negotiate with each other for the purpose of making a contract. (12 C.J.S. § 6, p. 10.)

In his original verified complaint respondent alleged that appellants agreed to pay him for securing a purchaser "and assisting in any such sale" and that he negotiated with Heath and Talbott and their agents and employees "in respect to the sale and purchase of said stock." The amendments made to the complaint in effect contradicted these original allegations. As a general rule a party will not be allowed to amend a pleading to contradict an admission made in his original pleading. (*Tognazzi* v. *Wilhelm*, 6 Cal.2d 123, 127 [56 P.2d 1227]; *Treager* v. *Friedman*, 79 Cal.App.2d 151, 172 [179 P.2d 387].) A party may not make a contention

based on a statement of fact contrary to the admissions and allegations in his own pleading. (*Bloss* v. *Rahilly,* 16 Cal.2d 70, 77 [104 P.2d 1049].)　　The allegations which were stricken are not conclusions of law but allegations of ultimate facts. If from evidentiary facts the allegations can be reached by that process of natural reasoning adopted in the investigation of truth, they are ultimate facts. (*Levins* v. *Rovegno,* 71 Cal. 273, 275, 278 [12 P. 161].) Ultimate facts are the logical conclusions deduced from certain primary facts evidentiary in character. (*Ellis* v. *Central California Trac. Co.,* 37 Cal.App. 390, 395 [174 P. 407] ; see 24 Cal.Jur. § 178, p. 928 for similar statements held to be statements of ultimate fact.) The allegations of the original complaint which were stricken stand as admissions of the facts alleged.　　A party will not be permitted to disprove admissions in his pleadings. (*Driver* v. *International Air Race Assn.,* 54 Cal.App.2d 614, 620 [129 P.2d 771].) Further, respondent alleged that as a result of his "work, efforts and services" (assisting in the sale and negotiating with Heath and Talbott), appellants sold the stock. This allegation was not stricken.

　　As defined in the Corporate Securities Act, a broker is "every person" other than an agent, who shall engage "in part" in the business of "offering for sale" or "negotiating for the sale of" any security. A sale includes every "attempt to dispose of" any security, also "an attempt to sell," also "a solicitation of a sale," and also "an offer to sell." We think it cannot be gainsaid from the evidence, which we have related in the light most favorable to respondent, that the services he performed were those of a broker. By his admissions in his pleading and by his testimony he assisted in the sale of the stock, and he negotiated with Heath and Talbott with respect to its sale and purchase. He initiated the conversations with appellants with respect to the sale of the stock. Respondent suggested the preparation of a financial statement, had a copy of it after it was prepared, showed it to Talbott, quoted the price, told Talbott about the plant, met in his office with Talbott and Neubauer, and went to Heath's office on several occasions in regard to the purchase of the stock. He was present at negotiations between appellants and Heath. He told Heath the business of the corporation and that it had war contracts. He discussed the purchase of the stock with Heath at his own office and at Heath's office. He met and had lunch with Cunningham for the purpose of talking about the purchase. Unquestionably, respondent

offered the stock for sale. He attempted to dispose of it. He attempted to sell it. He solicited a sale of the stock by appellants. These acts were sufficient to bring him within the terms of the act. We think also that he negotiated for the sale of the stock. He treated with others with a view to sale of the stock, which is negotiating. (*Mason* v. *Mazel,* 82 Cal. App.2d 769, 772 [187 P.2d 98]; *Grammer* v. *Skagit Valley Lumber Co.,* 162 Wash. 677 [299 P. 376, 380]; *Massie* v. *Dudley,* 173 Va. 42 [3 S.E.2d 176, 180]; *Baird* v. *Krancer,* 138 Misc. 360 [246 N.Y.S. 85, 86].) In *Davis* v. *Chipman,* 210 Cal. 609, 619 [293 P. 40], it was held that a mere offer of the plaintiff to sell real property constituted him a broker. The Real Estate Brokers Act at that time (Stats. 1919, p. 1252) included in the definition of a real estate broker a person who, for a compensation, offered for sale, or negotiated the purchase or sale of real estate.

Respondent urges that he was only a "middleman" in the sense that he merely brought the buyer and seller together so that they were able to make their own contract without any aid from him. (See *Kennedy* v. *Johnson,* 109 Cal. App. 662, 665 [293 P. 698]; 8 Am.Jur. § 167, p. 1083.) If a broker takes any part in the negotiations, he cannot be regarded as a middleman, no matter how slight a part it may be. (*Jensen* v. *Bowen,* 37 N.D. 352 [164 N.W. 4, 5]; *Crane* v. *Colonial Holding Corp.,* (Tex.Civ.App.) 57 S.W.2d 316, 320; *Shaver* v. *Consolidation Coal Co.,* 108 W.Va. 365 [151 S.E. 326, 332].) Respondent had a prospective buyer who was interested in purchasing the stock before he discussed the possible sale of the stock with appellants. The part played by respondent in the sale of the stock was much more than merely bringing the parties together so that they could make their own contract without any aid from him. He cannot, upon the uncontroverted evidence, be held to have been only a middleman.

In *Ryan* v. *Walker,* 35 Cal.App. 116 [169 P. 417], the plaintiff, an unlicensed person, sued for a commission. The court said, page 118: "There can scarcely be any doubt that plaintiff by introducing defendant to the owner performed all that the law required of him to entitle him to his commission, even though the owner saw fit subsequently to sell the property or a portion of it at a reduced price. (*Mattingly* v. *Pennie,* 105 Cal. 514, [45 Am.St.Rep. 87, 39 P. 200]; *Brown* v. *Mason,* 155 Cal. 155, [21 L.R.A.N.S. 328, 99 P. 867].)" It was held that because the promise to pay was not in writing, the plaintiff

could not recover as far as the action concerned the agreement to pay a commission for the sale of the real estate involved, the court saying, page 119: ''Nor is it any answer to this contention that plaintiff was a 'middleman and not an agent,' as claimed by appellant. His complaint alleges that he was a real estate broker, and it is settled that a broker is a middleman whose business is to bring seller and buyer together. He need have nothing to do with negotiating the bargain. (19 Cyc. 186; *Brown* v. *Mason*, 155 Cal. 155, [21 L.R.A.N.S. 328, 99 P. 867].) No such distinction as claimed by appellant is recognized in this state.'' (See, also, *Williams* v. *Kinsey*, 74 Cal.App.2d 583, 593, 594 [169 P. 487].)

*McKenna* v. *Edwards*, 19 Cal.App.2d 327 [65 P.2d 810], relied on by respondent, is not analogous. In *McKenna* the defendant promised the plaintiff that if she would negotiate a loan for him, to be secured by corporate stock, he would pay her $5,000 for her services. She was unable to secure the loan; but one Ray, whom she contacted, suggested that the defendant sell some of the stock. She conveyed Ray's suggestion to the defendant, who concluded to act on the suggestion; whereupon the plaintiff arranged for a conference between the defendant and Ray. The plaintiff was not present at any time during the conference; nor did she participate directly or indirectly in any of the negotiations between the parties. She did not, as did respondent, offer the stock for sale, attempt to dispose of it, attempt to sell it, or negotiate for its sale.

We do not think *Shaffer* v. *Beinhorn*, 190 Cal. 569 [213 P. 960], applicable to the facts of this case. There a demurrer to a complaint was sustained. Judgment for defendant followed. The plaintiffs were not licensed real estate brokers. On appeal it was held that the complaint stated a cause of action because it pleaded that (p. 573) ''the plaintiffs were only required 'to find' or 'to introduce' to defendant a person 'interested' in purchasing and who subsequently did purchase, in order to recover the sum agreed by defendant to be paid to them'' and their only duty was to produce a purchaser. The complaint expressly negatived any further act or acts on the part of the plaintiffs which might tend to bring them within the scope of the definition of a broker. The court held that a complaint predicated on such an agreement stated a good cause of action, saying (p. 574): ''The acts of plaintiffs, therefore, as alleged in the complaint, fall short of those defined by the Real Estate Brokers Act as constituting either a real

estate broker or real estate salesman.'' In that case the plaintiffs, as far as appeared from the face of the complaint, were not required to do, and did not do, anything except to find a person interested in the property and introduce him to the defendant.

The provision of the Corporate Securities Act requiring a broker of stock to first secure a license was designed to protect the public against unscrupulous operators. The efforts of respondent to sell the stock, as shown by the uncontroverted evidence, were illegal and will not support a promise to pay therefor. A contract employing a broker to sell corporate stock is void where the broker is not licensed to sell the stock under the Corporate Securities Act, and the broker may not recover a commission. (*Van Wyke* v. *Burrows,* 98 Cal.App. 415, 419 [277 P. 190]; *Brandenburg* v. *Miley Petroleum Exploration Co.,* (D.C.Cal.) 16 F.2d 933; cf., *People* v. *Roth,* 137 Cal.App. 592, 606 [31 P.2d 813].)

Reversed.

Wood, J., concurred.

Shinn, P. J., did not participate herein.

A petition for a rehearing was denied November 15, 1949, and respondent's petition for a hearing by the Supreme Court was denied December 22, 1949. Carter, J., and Schauer, J., voted for a hearing.